# National Bank of Kentucky et al. v. Kentucky River Coal Corporation et al.

(Decided October 1, 1929.)

T. E. MOORE, Jr., and MORGAN & HARVIE for appellants.

ALLEN, BOTTS & DUNCAN and D. I. DAY for appellee Day Mining Company.

P. T. WHEELER for appellee Kentucky River Corporation.

Opinion of the Court by Commissioner Hobson—Affirming.

On January 3, 1918, the Kentucky River Coal Corporation executed to W. H. West a coal lease on about 1,000 acres of land in Letcher county. West transferred his righ·s to the Amburgy Coal Company, which assumed all the liabilities imposed on West by the lease and undertook to operate the property. Later it changed its name to the Letcher Coal Company. It made extensive additions to the property and became insolvent. On October 2, 1925, it conveyed the property with all its rights under the lease to the Harlan Coal Company. The Harlan Coal Company on November 30, 1925, conveyed the pro erty to the Day Coal Company for $40 000, of which $10,000 was paid cash and notes executed for the remainder. All the notes were paid except two notes, each for $5,000, and one note for $2,000 which had been assigned to the Security Bank and National Bank of Kentucky. The banks brought suit on March 28, 1928, to enforce the payment of the notes and a sale of the property under the lien secured by the deed made by the Harlan Coal Company to the Day Coal Company. They made the Kentucky River Coal Corporation a party to the actions, and it set up its claim for unpaid royalties, due under the terms of the lease. The Day Coal Company ceased operations under the lease on April 1, 1928. At that time numerous creditors were taking steps to enforce their claims, and on June 9, 1928, in the consolidated actions which had been brought upon motion of appellants, the property of the coal company was placed in the hands of a receiver. By the terms of the lease the Kentucky River Coal Corporation was to receive a minimum royalty of $5,000 a year payable monthly. There was a balance due it on account of royalties on April 1, 1928, of $4,006. It asserted its lien for this money, also for the minimum royalty of $416.66 a month from that time on. On February 22, 1929, the banks tendered an amended petition in which they averred that all the minable coal on the premises had been exhausted on April 1, 1928, when the Day Coal Company ceased operation; that they had requested of the Day Coal Company and its receiver to demand a cancellation of the lease and had made the same demand of the Kentucky River Coal Corporation, but they had each declined to take any action. They prayed the court to adjudge a cancellation of the lease as of April 1, 1928, and to adjudge that no minimum

royalty was payable after this date. The court refused to allow this pleading to be filed and, the case being submitted, entered judgment directing the property to be sold as a whole, including all the additions made thereto and adjudging the Kentucky River Coal Company a first lien for the amount of its royalties, including the minimum royalty to the day of sale and the purchaser to take the property subject to the charge of the minimum royalty of $5,000 a year from that time on. The banks appeal.

During the time that the Letcher Coal Mining Company held the property, it placed upon it improvements such as railroad tracks, tipples, power plant, transformers, cutting machines, and buildings, etc., in all of the value of something like $100,000. All these things were a part of the plant. Appellants insist that under the lease the lessor, though given by the lease a lien upon the after-acquired property placed upon the leasehold, cannot enforce this lien to the prejudice of appellant's lien under the deed made to the Day Coal Company by the Harlan Coal Company. But that deed, after describing the property conveyed and referring to the lease under which it was held, conveys to the Day Coal Company "the above real, personal and mixed property, unto the party of the second part absolutely with covenant of general warranty, subject, however, to the terms of and conditions of the said lease hereinabove referred to." It is clear therefore that when the Day Coal Company accepted this deed it took the property subject to the terms of the original lease, by which the payment of the stipulated royalties were secured by a lien on all the property as it then stood or any future additions to the plans. The Harlan Coal Company, so taking the property, is as much bound by the terms of the lease as the original lessee.

Appellants earnestly insist that although it is so specified in the writing, a lien upon the property does not extend to property subsequently acquired, as against creditors and purchasers. But whatever might be the rule, if the creditors of the Letcher Coal Company were here complaining, the rule referred to has no application here. For this property under the pleadings was all there when the Day Coal Company bought, and by the terms of its deed it took the property subject to the original lease and subject to the lien that then existed in favor of the lessor. Appellants who bought from the

Harlan Coal Company, are in no better position than the Harlan Coal Company, for they bought with full notice of all facts, and the Harlan Coal Company could not set up this claim against the lessor, for it also assumed all the burdens of the Letcher Coal Company. It simply stepped into its shoes when it bought the property from it.

It is also earnestly insisted that under the statute the lessor only has a lien for one year's rent and has no lien for any rent that has been due more than 120 days. But the statutory lien (Ky. Stats., secs. 2316, 2317) in no wise prevents the parties from contracting for a further lien, and in this case the lease by apt terms does give a lien for all royalties due until paid. . The statutory lien does not affect the contract lien; the latter may be enforced though the statutory lien under the facts does not exist. 36 C. J. p. 480, sec. 1410. The lease contains these provisions:

"And the lessor shall have and is hereby given a lien upon all the improvements made and placed by the lessee on the said tracts or parcels of land as further security for the payment of the royalties, rentals, and other payments on this lease agreed to be paid, and for the performance of each and every one of the covenants in this lease contained upon the part of the said lessee to be observed, kept and performed.

"All the provisions herein contained for the collection of royalty, rentals, or other payments, shall be deemed cumulative and not exclusive, and shall not deprive the lessor of any of the other legal or equitable remedies, or other remedies in this lease provided."

Although the deed from the Harlan Coal Company to the Day Coal Company retained a lien for the purchase money, the latter company took the property under the deed subject to the prior lien of the Kentucky River Coal Corporation, which was in effect a lien for purchase money due under the lease, and was of record. The Harlan Coal Company not only did nothing to displace this lien, but it expressly conveyed the property to the Day Coal Company subject to this prior lien. Appellants rely upon Wender Blue Gem Coal Co. v. Louisville Property Co., 137 Ky. 339, 125 S. W. 732, but the facts of that case are entirely different. There the improvements had

been put upon the property by the lessee and the lien was held not superior to a creditor of the lessee. The creditor there had not taken the property subject to the lease, or agreed to perform its conditions. In Robinson, etc., v. Woodward, 48 S. W. 1082, 20 Ky. Law Rep. 1142, which is relied on, the trust fund had entirely lost its identity. That is not the case here.

Appellants also insist that the court erred in refusing to allow them to file their amended petition, pleading that the minable coal was exhausted, and in allowing the minimum royalty to be collected after April 1, 1928. The lease provides:

"In case the lessee shall fail in the observance or performance of any of the terms, conditions, covenants, stipulations, or agreements herein contained and any such failure shall continue for the period of sixty days after the lessor shall have given written notice of such default to the lessee, then and in such event, at the election of the lessor, the terms and leasehold interests hereby created and all of the rights and privileges of the lessee hereunder, shall forthwith cease and determine, and the lessor shall be entitled to enter and take possession of the property, rights and privileges hereby dismissed, leased and let, and all improvements hereon, and to exclude the lessee therefrom and to hold all the same free from the claims of lessee, anything herein contained to the contrary notwithstanding."

"All the terms, conditions, covenants, stipulations and agreements to be performed and observed by the parties hereto shall be binding upon and inure to the benefit of the said parties and their successors or assigns, and said parties, their successors or assigns, may enforce any or all of said terms, conditions, covenants, stipulations and agreements."

It will be seen that by the terms of the deed if the lessee failed in the observance of any of its terms and such failure continued for 60 days, at the election of the lessor all of the rights and privileges of the lessee ceased and the lessor was entitled to enter and take possession of the property rights, and privileges and to hold the same free from the claims of the lessee. It stands admitted that the lessee had not paid $4,000 of royalty due when these results were filed and some of it had been due for months. If the lessor took possession of the prop-

erty under this condition, it was entitled to hold the property for its claims. The lessee was only entitled to have the lease canceled by showing that it had performed all the conditions of the lease. Plainly it had not performed the conditions, and the banks holding the notes, sold by the Harlan Coal Company to them, at least had no better right than the lessee itself had. The plain effect of the lease was to give the lessor this security for the payment of the royalty. As the lessee had not performed the conditions of the lease, it was in no condition to demand the surrender of the property to it, and the banks had no better rights than the lessee. In Ross v. Sheldon (Ky.) 119 S. W. 225, there was a dispute between the two parties as to whether the lessees were proceeding to develop the lease with proper diligence, and the lessors brought an action against the lessee to forfeit the lease on this ground. It was held in that case that under the circumstances the lessee was not in the wrong in not spending more money upon the property during the pendency of the action, as he did not know his rights and was not called upon to risk his money further. That is not this case. Here the lessee stopped all operations on April 1, without giving any notice or making any claim that the coal was exhausted. The coal company in its answer set up the provisions of its lease and prayed the enforcement of its lien, and then prayed in the alternative, if it was not entitled to this, that the lease be canceled; but it only prayed for the cancellation of the lease if its lien was denied. Its lien was not denied by the court, but was upheld, and so the question whether the lease should be forfeited was not considered. It was made to appear to the court that the receiver had no fund to operate the mine; that it would remain idle until sold; that much of the property was of perishable nature and rapidly depreciating; and that a sale would be beneficial to all of the parties interested. Upon this undisputed showing the court ordered a sale of the property.

The plant was an entirety and was properly sold as a whole. There was no showing that anything could be advantageously sold separately. The lien was on the plant as a whole, and it might have been very prejudicial to the lienholder to sell the personal property separately from the plant. For the value of the plant as a whole might be much greater than the value of its parts sold separately. The circuit court has a discretion in allowing amended pleadings to be filed, and on the whole case

the court is unable to say that a sound discretion was abused in refusing the amended petition or in entering the judgment complained of. While it is a hard case on appellants, the court is not at liberty to impair the obligation of the contract. The contract must be enforced according to its fair import. When the banks took the notes, they took them with full notice of the nature of the security for their payment. The royalty, by the terms of the contract, continued as long as the leasehold existed. The court can only enforce the contract as it was made. Appellants' lien under the contract was on the leasehold, and, if the lease was terminated, their lien on the property went with it.

Judgment affirmed.