NORTH STAR COMPANY et al., Appellants,

v.

J. W. HOWARD et al., Appellees.

HARRIS COAL CORPORATION, Appellants,

v.

J. W. HOWARD et al., Appellees.

J. W. HOWARD et al., Appellants,

v.

NORTH STAR COMPANY, Inc., et al., Appellees.

J. W. HOWARD et al., Cross-Appellants,

v.

HARRIS COAL CORPORATION, Cross-Appellee.

J. W. HOWARD et al., Cross-Appellants,

v.

NORTH STAR COMPANY et al., Cross-Appellees.

Court of Appeals of Kentucky.

Nov. 23, 1960.

J. Blaine Nickell, Ralph N. Walter, Nickell & Walter, West Liberty, for North Star Co. and Buchanan Coal Co.

J. W. Howard, Howard & Francis, Joe Hobson, Prestonsburg, for J. W. Howard and Florence Howard.

Paul C. Shafer, Jr., C. F. Taplin, Jr., Arthur G. Taylor, Cleveland, Ohio, Earl R. Cooper, Salyersville, James W. Stites, Lively M. Wilson, Stites, Wood, Helm & Peabody, Louisville, for Harris Coal Corp.

C. A. Noble, Sr., Hazard, for Peoples Bank of Hazard.

Jo M. Ferguson, Atty. Gen., William S. Riley, Asst. Atty. Gen., John L. Ward, Special Asst. Atty. Gen., for Commonwealth of Kentucky, Department of Revenue, amicus curiae.

WADDILL, Commissioner.

The several appeals and cross-appeals question the correctness of: (1) The trial court's interpretation of certain provisions of a lease executed by J. W. Howard and his wife to the North Star Company; (2) the adjudication of the claims of the creditors of the North Star Company; and, (3) the order directing the sale of the real property owned by the North Star Company.

On September 1, 1951, J. W. Howard and his wife executed a lease on an 8,000 acre tract of land which they owned in Breathitt County to North Star Company (hereinafter referred to as Star). This lease provided for the payment of royalty of 15¢ a ton of coal mined and a minimum of $7,200 a year and was amended in August of 1953 to 20¢ per ton. Star subleased to Buchanan Coal Company (hereinafter called Buchanan), which was engaged in the mining of coal. These companies were entirely owned by I. H. Buchanan, Sr. and his family. Star's business enterprise consisted solely of acquiring property and leasing it to Buchanan. The operations of both companies were interdependent.

The financial condition of Buchanan had been unstable since 1949. Under its contract with the United Mine Workers Union, Buchanan was required to pay 40¢ per ton of coal mined to the Union's Welfare and Retirement Fund. When Buchanan was unable to pay this obligation the Union ordered the miners to stop work, and as a consequence the mines were shut down June 17, 1955. The insolvency of Buchanan resulted in an assignment for the benefit of its creditors.

Subsequent to the execution of the lease by the Howards to Star in 1951, Harris Coal Company (hereinafter called Harris), which acted as the sales agent for Buchanan, advanced money to Buchanan to use in furtherance of its mining operations on the Howards' property.

When Harris refused in 1953 to advance further money to Buchanan unless its existing debt was secured, Star executed a mortgage to Harris on the coal and mining rights which it owned on 258 acres and on an additional 1083 acres which it owned in fee. These tracts of land adjoined the Howards' property and are referred to in the proceedings as Items 33 and 34.

On August 22, 1955, the Howards filed an action against Star and numerous other parties who were asserting claims against both Star and Buchanan's assignee. In their complaint they sought certain amounts allegedly due them under their lease and asserted a lien on all properties of Star and Buchanan. On October 31, 1955, an order was entered consolidating the proceeding which Buchanan had instituted for the benefit of its creditors with this action.

After hearing proof the trial court entered judgment for the Howards on December 21, 1955, for $11,640.60, which represented unpaid royalties on coal removed from the Howards' land from April 25, 1955 to July 25, 1955. The Howards were adjudged a lien on all properties of Star both real and personal.

On October 9, 1956, following further hearing, judgment was entered for the Howards in the additional amount of $43,200. This award was for damages the court found that the Howards sustained by reason of Star's failure to diligently mine Howards' coal from July 25, 1955 to March 17, 1956, the date Buchanan's equipment was sold by order of the court.

On November 2, 1956, the Howards were adjudged a first lien on the real estate identified herein as Items 33 and 34. Harris was adjudged a second lien on Items 33

and 34 to secure a judgment it obtained against Star. Peoples Bank of Hazard, which also asserted a claim against Star, was awarded a first lien on fifty mine cars and a second lien on two power shovels belonging to Star. The Howards were awarded a second lien on the mine cars. Three drop bottom Euclids which were being used in connection with the mining operations were adjudged to be property of Katie Buchanan.

Pursuant to order of court a sale of Star's property was held on November 26, 1956. I. H. Buchanan, Jr. was the high bidder on certain property identified by the judgment as the mining unit which consisted of the leasehold and parts of Items 33 and 34. When I. H. Buchanan, Jr. was unable to provide surety, J. W. Howard's bid of $46,000 was accepted. That part of Items 33 and 34 which was not included in the mining unit was sold to Harris for $42,000.

■ The Howards contend that the court erred in failing to assess damages for loss of royalties after the sale of Buchanan's mining equipment, notwithstanding the fact that they did not object to this sale. The trial court correctly refused to allow the Howards damages for the period between the date of this sale and the final decree. To hold otherwise would permit the Howards to recover damages after they had not objected to a sale that, as the court has found, prevented further mining operations under the lease.

■■ Appellants Star and Harris urge that the Howards are not entitled to recover damages against Star because of Star's failure to diligently mine the Howards' coal, but are limited to the minimum royalty specified in the Howards' lease. The lease contains not only a provision for the payment of minimum royalty but also a covenant requiring Star to diligently mine the Howards' coal. The parties to the lease obviously did not intend the minimum royalty provision as a limitation on the specific covenant requiring Star to mine diligently.

Any other interpretation would render the requirement of diligence meaningless. The damages awarded for the breach of this specific covenant were warranted under the record. Freeport Sulphur Co. v. American Sulphur Royalty Co. of Tex., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890.

■ The Howards maintain that the trial court erred in not finding the amount of coal lost by improper mining. Their claim is based on the following clause of their coal lease:

> "* * * should any coal be lost through negligent, careless or improper mining by the Lessee, or in any manner destroyed, the Lessee shall pay for same as if mined and removed. * * *."

With reference to this clause of their lease, they claim that due to the augering operations of their coal it has become economically unfeasible to mine 800,000 tons of coal in back of the augered area and another 95,000 tons in unnecessarily large pillars. However, Star maintains that the coal back of the augered area is mineable and the coal pillars are not so large as to constitute wasteful mining practices. The trial court found that the evidence as to the quantity of coal lost by alleged improper mining practices was too indefinite to assess damages. The record supports this finding.

■ Harris contends that the court erred in concluding that a provision of the lease gave the Howards' a lien on the real estate of Star identified herein as Items 33 and 34. The provision in question reads:

> "And the Lessors shall have and are hereby given a first and prior lien upon all the property of the Lessee, both real and personal, of every kind and character whatsoever, whether now owned or hereafter acquired, which is in or upon the premises hereby leased or adjacent thereto at the time any default occurs, including, but without limitation, im-

provements, betterments, equipment, machinery, supplies and merchandise, as further security for the payment of royalties, rentals and other payments in this lease agreed to be paid when and as the same become due and payable, and for the performance of each and every of the covenants in this lease contained upon the part of the said Lessee to be observed, kept and performed."

Harris urges that the Howards' lien extends only to personal property of Star. It is argued that "in or upon," as appears in the lease, refers only to personal property because real estate can be neither "in or upon" other premises. We agree. However, this interpretation does not give meaning to the words "or adjacent thereto" which follows as an alternate phrase to "in or upon." Since both real estate and personal property can be adjacent to other real property, the question that arises is what did the parties to the lease intend by the language used. When the intention of the parties can reasonably be ascertained from the language used in the lease as a whole it is the duty of the court to effectuate such intention even though their purpose was inarticulately expressed. Ratliffe v. Ratliffe, 182 Ky. 230, 206 S.W. 478; 12 Am.Jur., Contracts, Section 227, page 745. As was said in Black Star Coal Corp. v. Napier, 303 Ky. 778, 199 S.W.2d 449, 451:

"* * * The primary rule is to ascertain and give effect, if possible, to the mutual intention of the parties. 17 C.J.S., Contracts, § 295, p. 5 [689]. Words will be construed in the sense they are employed by the parties, and unless a contrary intention appears, they will be given their ordinary meaning, 17 C.J.S. Contracts, § 300 and § 301, pp. 717 and 718. If the contract contains inconsistent clauses, they should be reconciled if possible, but the clause contributing most essentially to the contract is entitled to the greater consideration; if they both cannot stand, the first will ordinarily prevail over the second. * * *."

The provision of the lease in question contains three other expressions of intention to include real property within the lien. These are: (1) "All the property," (2) "both real and personal," and, (3) "of every kind and character whatsoever." The intention of the parties is further demonstrated by the fact that the purpose of the lien was to furnish security for the performance of the covenants of the lease. The expressions used to include real property within the lien would be given no meaning if only personal property is subject to the lien. Whatever may be the inaccuracy of expression or the inaptness of the words used in a legal sense, the intention of the parties was ascertainable, and we have concluded that the trial court correctly effectuated it by including both the real and personal property of Star within the lien of the lease. In view of this conclusion, the arguments to the contrary which advance subsidiary rules of construction are unavailing.

■ Three drop bottom Euclids were being used on the leased premises at the time the mining operations were discontinued. The Howards contend that the trial court erred in finding that the Euclids were owned by Katie Buchanan and had been leased by her to Star. We will not disturb this finding since it is supported by probative evidence.

■ The Peoples Bank of Hazard was adjudged a first lien on 50 mine cars which Star owned and used in connection with the mining operations upon the Howards' property. The Howards insist that they were entitled to a first lien on these cars under the terms of their lease. The Howards recorded their lease in Breathitt County while the Peoples Bank recorded its chattel mortgage on these cars in Perry County. In view of the fact that Star is a Kentucky corporation with its principal offices in Perry County, it was incumbent upon the

Howards to file their lien-instrument in Perry County to obtain priority over the Peoples Bank's mortgage. KRS 382.670 and 382.630; 10 Am.Jur., Chattel Mortgages, Section 93, page 775; 14 C.J.S. Chattel Mortgages § 151, p. 755; Jones on Chattel Mortgages, Volume 1, Section 253, page 429; Fletcher, Cyclopedia of Private Corporations, Volume 8, Section 4048, page 517.

The Howards contend that the officers of the Peoples Bank had actual knowledge of the lien provided in their lease when the Bank accepted a chattel mortgage on the mine cars. The contention is not supported in fact because there is no evidence that the Bank's officers had such knowledge.

■ The Howards also contend that they were entitled to be adjudged a landlord's lien on the mine cars under the provisions of KRS 383.070. Since the judgment obtained by the Howards included the rent due under the lease, which was adequately secured, they were not prejudiced by the trial court's failure to adjudge them a landlord's lien on the mine cars. Therefore, we will not disturb the judgment in this respect.

■ The Howards urge that the execution of the chattel mortgage on the mine cars by Star to the Peoples Bank was ultra vires, because it was executed to secure a debt of Buchanan, and therefore the mortgage was void. The power of a corporation to act as surety or guarantor exists whenever it is reasonably necessary in the conduct of its business. M. V. Monarch Co. v. Farmers' & Traders Bank, 105 Ky. 430, 49 S.W. 317; Fletcher, Cyclopedia of Private Corporations, Volume 6, (1950 Ed.) Section 2591, pages 546–550. It appears from the evidence that it was necessary for Star to secure the obligation of Buchanan to prevent its financial collapse and in that way enable Star to continue its mining operation on the Howards' premises. Under these circumstances the transaction in question was within the corporate power of Star

and the trial court did not err in sustaining the validity of this mortgage.

■ Harris and Star urge that the trial court erred in adjudging that the leasehold, a portion of Items 33 and 34, and the mining equipment located thereon constituted an inseparable mining plant, and also erred in ordering a sale of this mining plant subject to the terms of the Howards' lease. The grounds relied upon are: (1) There is no rule of law that permits real estate to be included within a mining plant; (2) sale of real estate in this manner destroys the right of redemption accorded by KRS 426.-530; and, (3) the sale of real estate in this manner subjects it to an unwarranted extension of the Howards' lien.

These contentions are unavailing for two principle reasons. The lease from the Howards to Star subjected Star's real estate (Items 33 and 34) to a lien to secure the performance of the covenants of their lease. Since the Howards did not seek a cancellation of their lease but the enforcement of its terms, the lease must be enforced as written. When Harris obtained a mortgage on Items 33 and 34, the security it obtained for its debt was subject to the lien and the covenants of the Howards' lease. The only way the trial court could order a sale of the lease without impairing the security pledged for its performance, was in the manner directed by the judgment. National Bank of Kentucky v. Kentucky River Coal Corporation, 230 Ky. 683, 20 S.W.2d 724. Hence, the judgment directing the sale of the lease and certain portions of Items 33 and 34 as a mining plant was proper under the circumstances.

■ The second reason is that Harris and Star waived their right to object to the sale of certain portions of Items 33 and 34 being included as a part of the mining plant by obtaining, pursuant to their motion, the order of sale of which they now complain.

Counsel appearing on behalf of the Commonwealth of Kentucky have filed a brief amicus curiae wherein it is urged that the

trial court failed to adjudicate its claim against Buchanan for certain unpaid taxes. While the Commonwealth has filed no appeal or cross-appeal, we will observe that since Buchanan made an assignment for the benefit of its creditors in 1955, the Commonwealth's claim should have been asserted against Buchanan's assignee.

Judgment affirmed.