RENDERED: FEBRUARY 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0546-ME

SPENCER STONE                                            APPELLANT

                   APPEAL FROM JEFFERSON CIRCUIT COURT
v.                HONORABLE TARA HAGERTY, JUDGE
                         ACTION NO. 17-CI-501586

CATHERINE STONE                                    APPELLEE

AND                      NO. 2019-CA-1863-MR

SPENCER STONE                                            APPELLANT

                   APPEAL FROM JEFFERSON CIRCUIT COURT
v.                HONORABLE LAUREN ADAMS OGDEN, JUDGE
                         ACTION NO. 17-CI-501586

CATHERINE STONE                                    APPELLEE

OPINION AND ORDER
AFFIRMING IN PART AND REVERSING IN PART IN CASE NO. 2019-CA-0546-ME AND DISMISSING CASE NO. 2019-CA-1863-MR

** ** ** ** **

BEFORE: GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: During their dissolution of marriage proceedings, Appellant Spencer Stone and Appellee Catherine Stone entered into a marital settlement agreement which required them to split the cost of "tuition" at their children's private school, but they later disagreed about whether "tuition" covered other fees and costs. Spencer, *pro se*, filed an appeal in 2019-CA-0546-ME. While that appeal was pending, the family court ordered Spencer to prepay $5,000 in attorney fees to Catherine in the ongoing proceedings. Spencer then filed an appeal in 2019-CA-1863-MR. We ordered the two related appeals to be consolidated. Having reviewed the parties' briefs and applicable law, we affirm in part and reverse in part in 2019-CA-0546-ME and dismiss in appeal 2019-CA-1863-MR as being from a nonfinal order.

Spencer and Catherine married in 2005 and had three children who were minors when Spencer filed a petition for dissolution in 2017. Later in 2017, Spencer and Catherine reached a marital settlement agreement which provided in relevant part that they "shall divide all unreimbursed medical expenses and [the costs of] agreed upon extracurricular activities equally." The agreement also provided that "as long as the children continue to attend St. Raphael, the parties will split the cost of tuition equally" and that "[s]o long as the parties' oldest

-2-

daughter attends Mercy, the parties will split the cost of tuition for her equally."

The agreement also stated that "Catherine has not incurred any indebtedness to anyone for which Spencer or his estate may be liable without the express consent of Spencer." Finally, the agreement provided that "[e]ach party shall be individually responsible for any attorney's fees and costs that he or she incurs in relation to this action."

Disputes soon rose about the meaning of the agreement. In April 2018, Catherine filed a motion asking the court to hold Spencer in contempt for failing to pay half of their children's extracurricular activity fees and for "guidance" regarding the private school expenses.

In August 2018, the court dissolved the marriage and incorporated the property settlement agreement by reference. However, the decree did not address, or end, the disputes.

After conducting a hearing, in December 2018, the family court issued an order finding in relevant part that "expenses related to the children's private school attendance, such as books, uniforms, and technology fees are contained under the umbrella term 'tuition.'" The family court also required Spencer to reimburse Catherine for half of additional fees, such as a summer camp and a field trip to Chicago. The court declined to find Spencer in contempt regarding the

private school expenses because the parties had a "good faith disagreement regarding the expenses included in their agreement[.]"

The court further found that Spencer was responsible for paying half of a lengthy list of extracurricular fees. Specifically, the court found:

> Any activity that the children participated in during the parties' marriage shall be considered an "agreed upon" activity. Spencer may not unilaterally withdraw his financial support for an activity which the children have historically participated in, nor may he unreasonably object to new endeavors that the children express an interest in beginning.
>
> IT IS HEREBY ORDERED AND ADJUDGED that Spencer is in contempt for failing to abide by the parties' agreement to divide the cost of the children's extracurricular activities equally. He shall pay Catherine $1,714.35 within thirty days of this Order. Hereafter, Spencer shall reimburse Catherine his one-half share of all extra-curricular expenses within thirty days of receipt of proof of payment. . . .

Though it obviously did not resolve the entirety of the parties' sundry disputes, the family court chose to include finality language pursuant to the Kentucky Rules of Civil Procedure (CR) 54.02(1), allowing for immediate appeal. The case was then reassigned to a different family court judge.

Spencer then filed a motion to alter, amend, or vacate. Specifically, Spencer argued the family court erred by concluding he had agreed to the extracurricular activities at issue. Among other things, Spencer also argued the family court failed to make findings on a $5,000 credit card debt allegedly incurred

-4-

by Catherine without Spencer's knowledge. Meanwhile, the parties continued to file motions seeking relief regarding other disagreements not germane to these appeals.

In March 2019, the original family court judge issued an order which substantively denied Spencer's motion to alter, amend, or vacate, though the order did not specifically state whether the motion was granted or denied. In relevant part, the court amended its prior order to state that Spencer "refused to respond" when Catherine asked him about enrolling their children in extracurricular activities and his "refusal to co-parent does not relieve him from his obligation to support the children as contemplated by the parties' settlement agreement." As to the credit card debt, the court found that Catherine had taken a cash advance on Spencer's card in September 2014 "to pay household bills and expenses for the children" and that when Spencer learned of the charge the following day he reported it as a fraudulent transaction. However, Spencer "has no legal basis to now request reimbursement" from Catherine because he knew of the charge when he assented to the marital settlement agreement, under which he "agreed to assume all credit card debt issued in his name." Spencer then filed an appeal in 2019-CA-

0546-ME, listing the December 2018 and March 2019 orders as the basis for the appeal.[1]

Meanwhile, the parties continued to litigate their various disagreements. Germane to Spencer's second appeal, in October 2019, Catherine filed a motion citing an alleged disparity in her income and Spencer's income and asking the court to order Spencer to advance her $5,000 in attorney fees "for fees she has incurred and continues to incur to defend herself from [Spencer's] frivolous and unnecessary legal actions." The court ordered the parties to file updated financial disclosure forms by November 4, 2019. Catherine did so; Spencer did not.

On November 6, 2019, the family court issued an order noting that only Catherine had filed the financial disclosure and that it showed her financial situation "has changed little since the parties' December 20, 2017 Marital Settlement Agreement[.]" Without noting that the parties' agreement explicitly requires each to pay his or her own attorney's fees, the court granted Catherine's motion and required Spencer to advance her $5,000 in attorney fees. Crucially, the court noted that "final allocation of fees is hereby reserved by the Court." Two

---

[1] We "do not have jurisdiction over the trial court's denial of a CR 59.05 motion" since such an order is interlocutory. *Ford v. Ford*, 578 S.W.3d 356, 365 (Ky. App. 2019). When a party "erroneously designates" an order denying its CR 59.05 motion in its notice of appeal, "we utilize a substantial compliance analysis and consider the appeal properly taken from the final judgment that was the subject of the CR 59.05 motion." *Id.* at 366 (internal quotation marks, emphasis, and citation omitted).

days later, Spencer filed his response to the order requiring updated financial reports. A little under a month later, with the family court having taken no additional substantive acts, Spencer then timely filed an appeal in 2019-CA-1863-MR.

We begin with Spencer's first appeal, which presents several questions.[2] Did the parties also agree to split evenly other costs assessed by their children's schools when they agreed to each pay half of their children's tuition? Did the trial court correctly conclude that Spencer must pay half of various extracurricular fees? Did the trial court err regarding a credit card bill and giving Catherine more time to refinance the marital home?

Settlement agreements "are a type of contract and therefore are governed by contract law[.]" *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citation omitted). Absent an ambiguity in the contract, which is not present here, a contract will be "enforced strictly according to its terms" and a court construing the contract will not consider any extrinsic evidence. *Id.* at 106 (citations omitted). Under longstanding Kentucky contract interpretation law, "[w]ords will be construed in the sense they are employed by the parties, and

---

[2] We decline Catherine's request to strike Spencer's brief. Although it does not contain a large number of citations to the record, including where he preserved all of the issues, the record is not expansive and Spencer's *pro se* briefs are minimally sufficient to enable us to review the issues contained therein.

unless a contrary intention appears, they will be given their ordinary meaning[.]" *Black Star Coal Corp. v. Napier*, 303 Ky. 778, 199 S.W.2d 449, 451 (1947) (citation omitted). We review *de novo* a circuit court's interpretation of a contract, including a marital settlement agreement. *Cagata v. Cagata*, 475 S.W.3d 49, 56 (Ky.App. 2015).

As to tuition, we note that the term is not specifically defined in the settlement agreement. And there is no definitive Kentucky precedent which clearly defines the term for private elementary and high schools.

A leading online dictionary defines "tuition" in relevant part as "the price of or payment for instruction[.]" *Tuition*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/tuition (last visited Nov. 5, 2020). Similarly, in an analogous case involving whether an agreement by a parent to pay college tuition included fees assessed by the university, we analyzed Kentucky statutes governing what is considered "tuition" in higher education and concluded tuition "include[s] those costs which are mandatory for a student to receive instruction once present in the classroom" and so the word tuition is defined as "all expenses imposed by the educational institution as a condition of full-time enrollment in an undergraduate program for an academic year." *Yarber-Nowlin v. Nowlin*, No. 2007-CA-002290-MR, 2008 WL 4092901,

*2 (Ky.App. Sept. 5, 2008) (unpublished).[3]  Although the costs here are for private elementary and high schools, that is a distinction which makes no practical, logical difference.

Synthesizing those authorities, the fundamental takeaway is that tuition includes *only* mandatory costs or fees which must be paid in order to attend the school(s) in question.  In other words, any optional costs or fees are not included within the scope of a private school's "tuition"—regardless of their educational, socialization, or developmental merit.  To conclude otherwise would require us to add a phrase like "and all fees and costs" to the parties' contractual agreement to split *only* the cost of private school tuition, which we may not do as "[o]ur duty is to carry out the expressed intentions of the parties.  When those intentions are clearly stated in a written document, we have no authority to add terms not included by the parties." *Snowden v. City of Wilmore*, 412 S.W.3d 195, 208 (Ky.App. 2013) (citation omitted).  If the parties had intended *all* costs and fees imposed by the private schools at issue to be encompassed by their agreement, they easily could have, and logically should have, written the agreement in the manner in which the parties did in *Cagata*, where the father was obligated under a settlement agreement to pay "the cost of tuition, books, registration and other fees,

---

[3] We cite *Yarber-Nowlin* as persuasive authority pursuant to CR 76.28(4)(c) as the parties have not cited, nor have we independently located, published authority helping to determine what constitutes "tuition" for private elementary and high schools.

and uniforms for all three (3) children through the eighth grade, at an agreed upon parochial school." 475 S.W.3d at 51.[4]

The question then becomes what fees or costs are mandatory and must be paid in order for the parties' children to attend the private schools at issue. We have not been directed to evidence to show that the summer dissection camp and 8th grade field trip to Chicago are—despite their likely merits—mandatory and unavoidable. Catherine states in her brief that the Chicago trip "is a normal part of the children's educational instruction" but does not point to anything showing the trip was mandatory. Costs are not mandatory simply because many students choose to engage in the activities which lead to the costs. Similarly, we have not been cited to evidence that student(s) must ride the bus to attend the private school(s) at issue. Again, Catherine contends her children must be transported to school, but she does not cite to anything in the record showing that the schools, not her personal circumstances, require any of the children to ride the bus, so the bus fees may not be deemed to be encompassed within "tuition." In short, the trial court erred by making Spencer pay half of the field trip, dissection camp, and bus expenses as tuition expenses. On the other hand, Spencer does not facially

---

[4] Cognizant of the fact that they are not precisely on point factually or legally, we cite the following authorities only to show how the term "tuition" generally has not been used to include all fees and costs imposed by a school. *See Ridgeway v. Warren*, 605 S.W.3d 567, 567-68 (Ky.App. 2020).

challenge the registration fees, uniforms, books, and iPad deposit expenses, which would presumably be mandatory in any event, so we affirm the trial court's decision to require Spencer to pay half of them.

The marital settlement agreement states that Spencer and Catherine "shall divide . . . agreed upon extracurricular activities equally."

Although this portion of their agreement does not contain the word "expenses" or "fees" or "costs," the parties seem to accept that the agreement means they shall split equally the expenses incurred in any agreed upon extracurricular activities engaged in by their children. It is uncontested that Spencer did not explicitly agree to any post-agreement extracurricular activities However, the trial court concluded Spencer had to pay half of a substantial list of extracurricular activity expenses because the children had engaged in many of those activities prior to when the agreement was reached, and Spencer had refused to respond when asked about approving new activities. We construe Spencer's argument to be that he can only be forced to pay half of the fees for extracurricular activities which he explicitly approved.

Again, we must interpret this contract as written without adding or subtracting from the words the parties chose to utilize. But "[w]ithin every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out."

-11-

*Farmers Bank and Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005).

In this case, that implied covenant of good faith and fair dealing means that Spencer was not required to agree to any particular new extracurricular activity fees.

We agree with the trial court's reasonable conclusion that Spencer had already agreed to extracurricular activities the children had undertaken prior to the agreement and that he had not explicitly withdrawn that extant approval. *Stewart v. Madera*, 744 S.W.2d 437, 439 (Ky.App. 1988) ("Both our statutory scheme and our case law demand that whenever possible the children of a marriage should be supported in such a way as to maintain the standard of living they would have enjoyed had the marriage not been dissolved."). In sum, we affirm the trial court's decision to direct Spencer to pay half of the extracurricular activity expenses in existence at the time of the settlement agreement. However, we reverse the trial court as to the order for Spencer to pay extracurricular activity expenses voluntarily assumed after the time of the agreement because the trial court relied on the settlement agreement for giving it such authority even though the settlement agreement did not mention, specify or contemplate these expenses.

Finally, we affirm the trial court's conclusion that Spencer was in contempt for failing to participate in the extracurricular activity decisions. The

parties' agreement was incorporated into a court order and thus Spencer's inarguable failure to meet his duty of good faith and fair dealing means he failed to comply with an order of the court, a contumacious act. *Smith v. City of Loyall*, 702 S.W.2d 838, 839 (Ky.App. 1986) ("A civil contempt occurs when a party fails to comply with a court order for the benefit of the opposing party[.]"). "The purpose of civil contempt authority is to provide courts with a means for enforcing their judgments and orders, and trial courts have almost unlimited discretion in applying this power." *Id.* at 838-39. We find no abuse of discretion here, especially since the practical effect of the contempt is unclear given that the trial court did not impose any sanctions.

Spencer contends the trial court should have held Catherine responsible for a $5,000 cash advance she took on a credit card in his name years before these proceedings began, apparently without his prior authorization. According to Catherine, the advance was used for household bills and expenses for the children. The settlement agreement states that Catherine and Spencer will each assume debts taken in their individual names and that Catherine "has not incurred any indebtedness to anyone for which Spencer or his estate may be liable without the express consent of Spencer." It is uncontested that Spencer knew of the credit card charge before entering into the settlement agreement, so if he did not agree that the matter had been resolved he logically should have made sure it was listed

as a disputed item in the settlement agreement which generally indicates that all debts have been resolved to the parties' satisfaction. We affirm the trial court on this issue.

The parties' agreement states that Catherine "shall refinance the property [the marital home] within ninety (90) days and Spencer will sign a quitclaim deed upon refinance." Issues regarding the marital home were not addressed in the trial court's order resolving the school tuition disputes, but in his motion to alter, amend, or vacate Spencer contended the court failed to rule on, among other things, "the transfer of the title of the residence to [Catherine] so that [Spencer's] name is off of the mortgage" and so Spencer requested the court to "make a judgement concerning the marital residence."

The motion to alter, amend, or vacate mentioned only transferring title to the marital home to Catherine alone and did not specifically refer to any refinancing by Catherine. Before the trial court ruled on the motion to alter, amend, or vacate, Spencer filed a motion asking the court to compel Catherine "to refinance the marital property as she was obligated to do pursuant to the terms of the Marital Settlement Agreement[.]"

The trial court did not specifically rule on Spencer's motion to compel. The court instead issued an order regarding only Spencer's motion to alter, amend, or vacate, which held in relevant part:

> [Spencer] also claims that [Catherine] violated the
> settlement agreement by failing to refinance the mortgage
> on the former marital residence. At the time of the
> hearing, [Spencer] had signed an authorization for
> [Catherine] to assume his purchase loan through the
> Veteran's Administration. [Catherine] testified that she
> had started the paperwork and expected to have the loan
> transferred within 90 days. If that has not occurred,
> [Spencer] may file a motion for the Court to address the
> issue.

That order did not contain any finality language. Spencer then filed this appeal.

After citing to where the matter was allegedly preserved and to the standard of review for marital settlement agreements, Spencer's entire substantive argument is:

> The Circuit Court states ". . . [Spencer] had signed an
> authorization for [Catherine] to assume his purchase loan
> through the Veteran's Administration ('VA')" for the
> refinance of the marital home. No such document exists,
> where Spencer signed an authorization for Catherine to
> assume his VA loan. Spencer did write an email
> attempting to make it easier for Catherine to refinance the
> loan; however, the assumption of the loan was denied.
> Further, the [settlement agreement] clearly states that
> Catherine will assume the property within 90 days of the
> [settlement agreement].
>
> Spencer respectfully requests this Court to remand
> [the matter to] the Circuit Court to vacate paragraph 3 of
> the March 7, 2019 order, and to enforce the [settlement
> agreement], requiring Catherine to immediately refinance
> or sell the marital home.

The only time Stone explicitly asked the court to direct Catherine to refinance the marital home was in his motion to compel, but he failed to insist on a

-15-

ruling on that motion before appealing. In criminal and civil cases alike, precedent plainly holds that a party who does not insist that a trial court rule on a request for relief has waived appellate review of the disputed issue(s). *Dillard v. Commonwealth*, 995 S.W.2d 366, 371 (Ky. 1999) (citation omitted) ("It is the duty of one who moves the trial court for relief to insist upon a ruling, and a failure to do so is regarded as a waiver."); *Oldham Farms Development, LLC v. Oldham County Planning and Zoning Comm'n*, 233 S.W.3d 195, 197 (Ky.App. 2007) (citation omitted) ("But as noted by the appellees in their documents, the failure of Oldham Farms to insist upon a ruling by the circuit court on these issues means that they are not properly preserved for our review.").

Moreover, the refinancing order does not appear to be final and appealable. The order did not contain finality language, and some issues remained outstanding after that order was issued. Spencer filed his appeal before the ninety days given to Catherine to refinance expired. The trial court obviously did not consider the refinancing matter to be finally concluded because it specifically stated Spencer could seek relief if Catherine failed to refinance within ninety days.

Even if we take Spencer's *pro se* status into account and somehow leniently ignore the waiver and lack of finality problems, it is unclear what relief he requests. He has shown no error or abuse of discretion in the trial court's granting Catherine extra time to refinance the marital home, even if we assume

-16-

(solely for purposes of argument) that the court meant refinancing in general instead of specifically assuming the extant mortgage. The court invited Spencer to seek relief if Catherine did not accomplish the refinancing within ninety days. That was the proper avenue of relief for Spencer to pursue if Catherine failed to comply with the court's deadline.[5] In short, we discern no basis for appellate relief on the refinancing issue. If the refinancing issue has not been resolved, Spencer may seek relief from the family court.

Spencer's second pro se appeal asks us to reverse the trial court's decision to advance $5,000 in attorney fees to Catherine. However, the order challenged by Spencer lacks finality language, and there were other matters remaining to be addressed by the court (indeed, a hearing on setting a proper visitation schedule had been set but not yet held when Spencer filed this appeal in December 2019). In fact, the trial court obviously expected to revisit the attorney fee issue because the challenged order stated that "final allocation of fees is hereby reserved by the Court." In short, the order from which Spencer appealed was

---

[5] We decline Spencer's invitation to take judicial notice that Catherine had not refinanced the home by the time he filed his reply brief. We must utilize the record before us in making our decisions, and the record in this case does not show whether Catherine refinanced the home. Moreover, judicial notice is reserved for facts which are "not subject to reasonable dispute" because they are either "[g]enerally known" within the county or "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Kentucky Rule of Evidence (KRE) 201(b). The matter of whether Catherine has refinanced a home and, if so, when that occurred is not the type of unassailable adjudicative fact of which a court may properly take judicial notice.

interlocutory, not final and appealable. *Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722, 726 (Ky. 2008) (citation omitted) ("A final adjudication is a judgment that conclusively determines the rights of the parties in regard to that particular phase of the proceeding.").

For whatever reason, Catherine did not file a responsive brief. Nonetheless, "this Court must determine on its own whether the order appealed from lacks finality" because "[w]ith limited exceptions, an appeal may not be taken from a non-final order. Therefore, this Court is without jurisdiction to consider the merits of the appeal." *Energy and Environment Cabinet v. Concerned Citizens of Estill County, Inc.*, 576 S.W.3d 173, 176 (Ky.App. 2019) (citation omitted).

Here, it is plain that the attorney fee advancement order was interlocutory, not final, since it does not resolve all the issues before the court and does not contain the finality language. Therefore, we must dismiss this appeal without prejudice.[6] *Id.*

Upon rehearing of this attorney's fees matter we state that any award of attorney's fees prior to determination of success on appeal must demonstrate dire financial circumstances, and the advance of funds is necessary to rightfully

---

[6] Because we are dismissing the appeal, we express no binding opinion on whether the trial court erred or abused its discretion in ordering Spencer to advance a portion of Catherine's attorney fees. However, the plain language of the parties' settlement agreement provides that neither will be responsible for the other's attorney fees. When the case returns to family court, it must take that clause into account when issuing any attorney fee decisions.

-18-

appeal or to defend an appeal of the order of the court.  In addition, the trial court should consider the partial success of Spencer's appeal in this controversy.

For the foregoing reasons, in 2019-CA-0546-ME, the Jefferson Circuit Court is affirmed in part and reversed in part in accordance with the analysis stated herein, and 2019-1863-MR is dismissed.

ALL CONCUR.

ENTERED:  <u>February 5, 2021</u>                    <u>/s/ Kelly Thompson</u>
                                                              Judge, Court of Appeals


BRIEFS FOR APPELLANT:                BRIEFS FOR APPELLEE:

Spencer Stone, *pro se*                      Gwen Meehan
McLean, Virginia                               Louisville, Kentucky