RENDERED:  MARCH 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1462-MR

DAVID DIXON                                                              APPELLANT


                        APPEAL FROM LAUREL CIRCUIT COURT
v.                      HONORABLE GREGORY A. LAY, JUDGE
                        ACTION NO. 19-CI-00872


PNC BANK, NATIONAL
ASSOCIATION SUCCESSOR IN
INTEREST BY MERGER TO
NATIONAL CITY BANK; ACR
DEALER FUNDING, LLC; AND
JEFFREY LEWIS                                                           APPELLEES

AND

NO. 2022-CA-0678-MR

DAVID H. DIXON                                                          APPELLANT


                        APPEAL FROM LAUREL CIRCUIT COURT
v.                      HONORABLE GREGORY A. LAY, JUDGE
                        ACTION NO. 19-CI-00872


PNC BANK, NATIONAL
ASSOCIATION SUCCESSOR IN

INTEREST BY MERGER TO
NATIONAL CITY BANK                                      APPELLEE


OPINION
REVERSING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE: David Dixon ("Dixon") appeals from the Laurel Circuit Court's order entered on July 9, 2021, which granted Appellee's Motion to Enforce Settlement Agreement. Dixon further appeals the Laurel Circuit Court's order sanctioning him also entered on May 10, 2022. We reverse.

## I.   BACKGROUND

Walter and Marie Lewis purchased a plot of land in Laurel County, Kentucky in 1973. Record ("R.") at 80-82. In 2007, they agreed to convey a portion of their land to their son, Jeffery Lewis ("Lewis"). R. at 13-14. Lewis constructed a home on the property; however, because his parents' property surrounded his own property and neither paid attention to the property lines, Lewis's driveway, sewage system lateral lines, and deck infringed upon his parents' property. R. at 117. To finance the construction of his home, Lewis obtained a loan from National City Bank, later acquired by PNC. R. at 18-31. PNC holds a mortgage upon Lewis's property. *Id.*

A foreclosure action was initiated against the property Walter and Marie Lewis owned. The property was purchased by Dixon at a Master Commissioner's sale on March 20, 2014. R. at 37-42. However, the sale was later set aside considering the encroaching driveway, sewage system lateral lines, and deck. Video Record ("VR") at 2/12/2021, 9:41:08-36. Attempting to resolve the matter, PNC and Dixon had several discussions, and separately commissioned two surveys to identify any property or title issues. R. at 116-17. These out-of-court discussions were unsuccessful; thus, PNC filed a lawsuit against Dixon.

This appeal arises from the October 8, 2019, lawsuit PNC filed, seeking an "order declaring that Mr. Lewis and the Lewis Property have an irrevocable license or easement by implication or estoppel with respect to the driveway, deck, and lateral lines located on the Dixon Property enforceable against Mr. Dixon and his successors and assigns" and "[t]hat PNC's Mortgage attaches to any and all interest of Mr. Lewis in the Lewis Property, including, but not limited to, any license or easement by implication or estoppel." R. at 8-9.

On October 26, 2019, Dixon sent a letter to PNC regarding the settlement agreement PNC and Dixon had been negotiating, which stated:

> Before going into all the factually incorrect statements in the complaint we should cut to the quick and *focus on the reasons why an easement for the sewer line cannot be granted*.

R. at 59 (emphasis added). After more correspondence between PNC and Dixon

attempting to negotiate a resolution, PNC sent a proposed Settlement Agreement to

Dixon, which stated in pertinent part:

> Seller agrees to sell to Purchaser and Purchaser agrees to
> purchase from Seller certain property and improvements
> appurtenant thereto and certain easements as set forth in
> the Deed (the Property") and Easement attached hereto as
> Exhibit A, in exchange for the total Purchase Price (the
> "Purchase Price") of Thirty Thousand and No/100
> Dollars ($30,000), subject to the terms and conditions set
> forth herein.

R. at 110. The attachments to this unexecuted Settlement Agreement included a

separate deed for the conveyance of the real property, and a limited easement

agreement for maintenance of the sewage lines. R. at 110-14. Dixon refused to

sign PNC's proffered Agreement, as he had concerns with the easement for

maintenance of the sewage lines. R. at 67. On February 1, 2021, PNC filed a

Motion to Enforce the Settlement Agreement. R. at 67-119. On July 9, 2021, the

circuit court ordered Dixon and PNC to comply with the Settlement Agreement

and execute the required documents, including the deed. R. at 113-39. Dixon did

not execute the documents as ordered by the circuit court. On July 19, 2021,

Dixon, through counsel, filed a motion to alter, amend, or vacate the July 9, 2021

order. R. at 141-45. Along with the motion, Dixon filed an affidavit, stating:

> That I agree to sell a portion of my property for
> $30,000.00 to resolve the driveway and deck

encroachment, but ***never agreed to an easement for the septic system/leach field***.

R. at 141 (emphasis added).

PNC and Dixon continued to work on executing a settlement agreement without success. On August 16, 2021, Dixon sent a letter to PNC expressing his interest in executing the required documents for the Settlement Agreement. R. at 204. However, this letter explicitly stated his hesitation to an easement upon the property:

> Easements must be in writing and should be recorded with the deed. I have never seen such an easement and continued to be puzzled why you need "an access easement . . . for access to the Lewis Property septic system." Wasn't that the purpose of PNC purchasing the land? What more do you need? If you can figure out the answers to these questions, then ***perhaps we can agree upon an easement that could be agreed to when we meet to sign the purchase agreement . . . . I am willing to sign an agreement implementing [an easement] if it is reasonable, does not appreciably diminish the value of my property and does not subject me to an unwarranted risk of liability based on PNC's nonconforming septic system and lines***.

*Id*. (emphasis added). On November 19, 2021, the circuit court entered an order denying the motion to alter, amend, or vacate. R. at 202-05. The circuit court reasoned that Dixon was bound by the letters he delivered to PNC. R. at 204-05. After Dixon failed to comply with the order issued on July 9, 2021, PNC filed a "Motion to Compel Compliance" with the circuit court's July 9, 2021 order on

December 6, 2021, seeking attorney's fees based on Dixon's failure to execute the necessary documents. R. at 206-12.

On May 10, 2022, the circuit court entered judgment against Dixon confirming its prior orders. The circuit court invoked CR[1] 70, directing the Master Commissioner to execute the necessary documents it had previously ordered Dixon to sign. R. at 291-308. The circuit court also held Dixon in contempt for violating the July 9, 2021 order and awarded sanctions in favor of PNC. R. at 293. The court ordered that Dixon's proceeds of $30,000 from the sale of the property would be reduced by $20,865.20, the amount of attorney's fees PNC expended trying to enforce the circuit court's order. *Id.* This appeal follows.

## II.    STANDARD OF REVIEW

"A settlement agreement is a type of contract which is governed by contract law." *Ford v. Ratliff*, 183 S.W.3d 199, 202 (Ky. App. 2006). "The construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000).

A trial court's decision holding a party in contempt and awarding sanctions is reviewed for abuse of discretion. *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky. App. 2007). "The test for abuse of discretion is whether the [circuit

---

[1] Kentucky Rules of Civil Procedure.

court's] decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id*. (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted)).

## III.   ANALYSIS

Dixon argues that he never signed the Settlement Agreement that PNC presented and never assented to the easement clause in the Settlement Agreement. The circuit court determined that, through Dixon's actions and letters, he did assent to the written Agreement that included a clause for an easement.  R. at 291-95.

Under Kentucky law, certain transactions must be reduced to writing and signed to be enforceable.  The statute of frauds "prohibits the sale or transfer of land by parol[.]" *Bennett v. Horton*, 592 S.W.2d 460, 462 (Ky. 1979).  KRS[2] 371.010(6) provides:

> No action shall be brought to charge any person:  . . .
> Upon any contract for the sale of real estate, or any lease
> thereof for longer than one year; . . . unless the promise,
> contract, agreement, representation, assurance, or
> ratification or some memorandum or note thereof, be in
> writing and signed by the party to be charged therewith,
> or by his authorized agent.

Therefore, oral contracts for the sale of land are unenforceable.  An agreement for the sale of real property must be reduced to writing and include all material terms. KRS 371.010.  The parties may still execute an oral contract if they so wish;

---

[2] Kentucky Revised Statutes.

however, once the statute of frauds is raised as an issue, the oral contract becomes unenforceable. *Smith v. Williams*, 396 S.W.3d, 296, 299 (Ky. 2012) (citations omitted).

To satisfy the statute of frauds, the written contract of sale must be signed by the party against whom enforcement is sought. KRS 371.010; *see Smith v. Ballou*, 211 Ky. 281, 277 S.W. 286, 287 (1925). *Adamson v. Adamson*, 635 S.W.3d 72, 79 (Ky. 2021), involved a purported oral agreement for the sale of land that occurred during a mediation. The terms of the agreement were reduced to writing by the mediator; however, the appellant refused to sign the agreement because he did not believe the terms matched the oral agreement that occurred between the parties. *Id*. The Kentucky Supreme Court determined that the statute of frauds was applicable to the agreement at issue; that the statute was not satisfied; and that the agreement was therefore unenforceable because the appellant had not signed it.[3] *Id*.

In the case at hand, the Settlement Agreement for the sale of Dixon's property is an agreement for the sale of land, and the statute of frauds is applicable. Dixon is the party against whom enforcement of the settlement agreement is sought. The proposed Settlement Agreement including the easement was never

---

[3] The Court determined that the mediator was not an agent of the appellant; therefore, the mediator's signature was not binding. *Adamson*, 635 S.W.3d at 79-80.

signed by Dixon, so the statute of frauds has not been satisfied, and the Agreement is unenforceable. As the *Adamson* Court held, "[o]ur precedent makes clear that whatever type of conveyance the lower courts perceived it to be, so long as there is a purpose to transfer title to land, the Statute of Frauds is operable." *Adamson*, 635 S.W.3d at 78.

PNC argues the October 26, 2019 and August 16, 2021 letters and the July 19, 2021 affidavit take the agreement outside of the statute of frauds. Further, PNC alleges the letters sent from Dixon exhibit his assent to the easement clause of the Settlement Agreement. Kentucky law recognizes that a "written memorandum [sufficient to meet the statute of frauds] may consist of a writing signed by the party to be charged, coupled with another writing which is either expressly or impliedly referred to in the signed writing." *Sweeny v. Theobald*, 128 S.W.3d 498, 501 (Ky. App. 2004). There are multiple letters from Dixon confirming his assent to the sale of his property that remove the transaction from the statute of frauds, according to PNC.

While the letters from Dixon reference his willingness to assent to a sale of the property, they also indicate that Dixon was unwilling to agree to the proposed easement without something further. At best, the letters indicate an agreement to consider a possible future agreement insomuch as Dixon stated that "perhaps we can agree upon an easement that could be agreed to when we meet to

-9-

sign the purchase agreement . . . ." Dixon went on to explain his future agreement to the easement was dependent on its reasonableness, the effect it might have on the value of his property, and the risk of possible liability vis-à-vis PNC's nonconforming septic system and lines.

"It should be obvious that an agreement to agree cannot constitute a binding contract." *Walker v. Keith*, 382 S.W.2d 198, 201 (Ky. 1964). "To be enforceable and valid, a contract to enter into a future covenant must specify all material and essential terms and leave nothing to be agreed upon as a result of future negotiations." *Id.* "Where an agreement leaves the resolution of material terms to future negotiations, the agreement is generally unenforceable for indefiniteness." *Cinelli v. Ward*, 997 S.W.2d 474, 477 (Ky. App. 1998). At best, the letters indicate that Dixon was open to considering the easement, but he did not assent to all material terms related thereto. Moreover, we disagree that the agreement to agree contained the kind of a "definite objective standard" that would have allowed the court to determine that Dixon's conditions had meet met. Dixon's future conditions were subjective and not capable of reduction to a formalistic computation by the court. *Walker*, 382 S.W.2d at 200.

PNC further cites Dixon's August 16, 2021 letter as a source of assent to the easement. Reliance on that letter is unavailing it was sent *after* the order enforcing the Settlement Agreement was made. Memoranda for the statute of

-10-

frauds must be created contemporaneously with the oral agreement. *Gray v. Stewart*, 658 S.W.3d 1, 20 (Ky. 2022). In *Gray*, there was a contract for the sale of "certain real property located near Balkan and Calloway, in Bell County, Kentucky." The term "certain real property" did not expressly identify which part of the Stewart's property was to be conveyed. *Id*. Gray argued that other references were made that would allow the Court to determine the parties' intentions regarding the property to be conveyed, but the Court held:

> we find nothing in the writing itself to resolve the dispute as to whether the parties intended 411 or 260 acres to be conveyed and verbal testimony, although considered and weighed here by the trial court in favor of Gray, is not admissible to resolve the dispute. ***Although Gray urges that various writings created after the contract may be used to explain the parties' intentions and he urges those writings explain that the "certain real property" to be conveyed was the property surveyed by Grande, we view [our precedent] as clear authority guarding against their use***.

*Id*. (emphasis added). Therefore, PNC cannot rely on the August 16, 2021 letter sent from Dixon. There is no enforceable contract between PNC and Dixon; thus, the circuit court erred in granting PNC's Motion to Enforce the Settlement Agreement.

-11-

Furthermore, the trial court enforced contempt sanctions against Dixon in the amount of PNC's legal fees and costs.[4]  The standard of review for contempt sanctions is abuse of discretion.  *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky. App. 2007).  "A trial court abuses its discretion when it renders a decision which is arbitrary, unreasonable, unfair or unsupported by legal principles." *Williams v. Commonwealth*, 229 S.W.3d 49, 51 (Ky. 2007).  It is undisputed that Dixon did not comply with the trial court's orders directing enforcement of the Settlement Agreement.  But an order imposing sanctions for a party's contumacious failure to follow the court's directives presupposes that the court's previous orders are legally sound, and in this case, as we have set forth in this Opinion, they are not.  Because the order sanctioning Dixon for non-compliance rises and falls with the orders which we have concluded are erroneous, we hold that the trial court abused its discretion in imposing sanctions under these circumstances.  Therefore, the May 10, 2022 order holding Dixon in contempt is likewise reversed.

## IV.   CONCLUSION

For the foregoing reasons, the Laurel Circuit Court's July 9, 2021 and May 10, 2022 orders are REVERSED.

---

[4] The trial court awarded $20,865.20 to PNC to be set off against the $30,000 settlement payment that had been agreed upon by Dixon and PNC.

ALL CONCUR.

BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEE:

David Dixon, *pro se*          Sarah Mattingly
London, Kentucky               K. Cassandra Carter
                               Louisville, Kentucky