RENDERED:  DECEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0111-MR

CHRISTINE M. MEEUSEN                                     APPELLANT

v.
APPEAL FROM KENTON CIRCUIT COURT
HONORABLE DAWN M. GENTRY, JUDGE
ACTION NO. 06-CI-01246

GARY C. KEMPHAUS                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, MCNEILL, AND L. THOMPSON, JUDGES.

GOODWINE, JUDGE:  Christine M. Meeusen ("Christine") appeals from the

October 16, 2019 order of the Kenton Circuit Court, Family Division, denying her

motion to enforce the parties' 2014 agreed order and for reimbursement of attorney

and expert fees and the order denying her motion to alter, amend, or vacate entered on December 20, 2019.[1]  After careful review, we affirm.

## BACKGROUND

Christine and Gary C. Kemphaus ("Gary") were married in 1991. Their marriage was dissolved in 2007.  As part of the dissolution, the parties entered into a property settlement agreement.  In Article II of the property settlement agreement, the parties agreed all material marital assets had been disclosed and if, in the future, any material marital asset not previously disclosed by a party is discovered, the other party would be entitled to the entirety of the fair market value of the asset.  Record ("R.") at 106-07.  Furthermore, Article II requires either party to "at any time upon presentation from the other party sign a release authorizing that party to view account statements for any account that can be traced as having been in existence during the parties' marriage and up to the date of the agreement."  R. at 107-08.  Article X of the property settlement agreement allows the party seeking enforcement of the agreement to recoup attorney fees and costs where "the court finds that the enforcement action was proper and/or the other party is found to be in contempt of court[.]"  R. at 123.

---

[1] The December 20, 2019 order was not attached to Appellant's brief but was found at pages 727-28 of the record.  It was also listed in the notice of appeal.

After entry of the property settlement agreement, Christine engaged in a years' long search for marital funds hidden by Gary. This search included several requests and subsequent orders for Gary to sign all financial releases presented by Christine under Article II of the settlement agreement. In 2012, Christine retained Terry Yoho, a certified public accountant specializing in financial forensics, to uncover marital funds Gary did not disclose at the time of divorce.

In 2013, in the United States District Court, Eastern District of Kentucky, Gary pled guilty to a count of structuring transactions to evade reporting requirements.[2] Gary's structuring scheme entailed numerous cash deposits of just under $10,000.00 into Fifth Third Bank account *7168 ("Fifth Third *7168") and Fifth Third Bank account *5816 ("Fifth Third *5816") throughout 2010 and 2011. Gary then transferred these funds into PNC Bank account *6138, Charles Schwab account *9318, and Discover Financial Services account *5137. As part of Gary's plea agreement, the Internal Revenue Service ("IRS") seized $238,329.07 from the PNC, Charles Schwab, and Discover accounts.

On August 1, 2014, rather than proceeding to trial, the parties entered into an agreed order meant to be a "global resolution on all pending matters." R. at 433-37. As part of the agreement, Gary disclosed all bank accounts under his

---

[2] 31 United States Code ("U.S.C.") § 5324(a)(3).

name or held by a third party on his behalf as of July 22, 2014, in the attached

Exhibit 1. In relevant part, the parties also agreed to the following:

1. [Gary] hereby acknowledges that all of the funds seized by the United States Government (approximate amount of $238,329) under case titled United States Government v. Gary C. Kemphaus in United States District Court, Eastern District of Kentucky (Northern Division at Covington), Case Number 2:12-CR-60-DLB-1; USM Number 17212-032 were funds that should have been disclosed under Article II of the Property and Custody Agreement filed with this Court on May 3, 2007. Pursuant to the terms of Article II of said Agreement, [Christine] is entitled to receive 100% of these funds as her property. [Christine] will be pursuing recovery of the funds seized by the United States Government. The parties hereto waive any claim against the other regarding these seized funds.

. . .

5. [Gary] shall provide to [Christine] and her attorney within 45 days from July 31, 2014, all documentation to provide proof to [Christine] of all transactions and tracing of $207,424.58 that was deposited in Everbank under [Gary's] name as of November 8, 2012 (or date near to said timeframe). This documentation shall include all statements from all financial institutions in which these funds were deposited into and withdrawn from. If a deposit of these funds went into an account that already contained a balance, the entire balance of said account shall be documented and traced to verify that the funds are part of the funds listed on Exhibit 1. If an account arises that is not listed on Exhibit 1 and/or a balance exists that is not listed on Exhibit 1, the entire funds not disclosed on Exhibit 1 shall immediately become [Christine's] property and [Gary] shall forfeit the entire sum of funds (100% of all funds) over to [Christine] within five days. If the funds referenced herein are traced into a third party's account, [Gary] shall

pursue and obtain all of the funds traced into said third party's account and deliver those funds to [Christine].

6. [Gary] shall provide [Christine] and her attorney within 45 days from July 31, 2014, all documentation of all transactions and tracing of all funds that [Gary] held in Atlantic International Bank or bank located in Belize C.A. that received the funds referenced in [Gary's] October 7, 2009 letter to Credit Suisse. This documentation shall include all statements from all financial institutions in which these funds were deposited into and withdrawn from. If a deposit of these funds went into an account that already contained a balance, the entire balance of said account shall be documented and traced to verify that the funds are a part of the funds listed on Exhibit 1. If an account arises that is not listed on Exhibit 1 and/or a balance exists that is not listed on Exhibit 1, the entire funds not disclosed on Exhibit 1 shall immediately become [Christine's] property and [Gary] shall forfeit the entire sum of funds (100% of all funds) over to [Gary] within five days. If the funds referenced herein are traced into a third party's account, [Gary] shall pursue and obtain all of the funds traced into said third party's account and deliver those funds to [Christine].

R. at 434-35.

Gary filed a notice of compliance with the agreed order, providing, in part, his Everbank and Atlantic International Bank statements. A subsequent order required Gary to disclose additional information, including complete lists of his accounts at Discover and PNC. Gary then filed two additional notices of compliance providing letters from Discover regarding his accounts, a list of PNC accounts, and authorizations for Christine to receive records from Everbank, PNC,

and Discover.  Christine repeatedly objected to the sufficiency of the documentation provided by Gary.

In 2018, Christine filed a motion to enforce the 2014 agreed order. Specifically, Christine alleged Gary failed to trace two transactions:  a $179,225.00 check written from the Everbank account and a $26,777.00 withdrawal from the Discover Bank account.  In his response, Gary provided documentation of deposits in the amounts of $179,225.00 and $26,777.00 into Bank of Kentucky account *7830 ("Bank of Kentucky *7830").  R. at 600.

On September 26, 2019, the family court heard Christine's motion to enforce the 2014 agreed order.  Christine presented the testimony of Ms. Yoho,[3] who completed an undisclosed funds analysis on Christine's behalf.  Ms. Yoho's full report was entered into the record as Petitioner's Exhibit 2.  In preparing her report, Ms. Yoho reviewed Gary's account statements, checks, and deposits from various financial institutions, the 2014 agreed order, and documents from the criminal action, including the plea agreement and the affidavit from Robert Wilson, a former IRS investigator who worked on Gary's case.[4]  Ms. Yoho testified she discovered at least $131,311.00 had been undisclosed by Gary and

---

[3] The parties stipulated to Ms. Yoho's qualification as an expert witness.

[4] Mr. Wilson's affidavit, as well as Gary's plea agreement, are included as exhibits to Ms. Yoho's report.

was owed to Christine. Video Record ("V.R.") at 9/26/19, 9:54:50. Ms. Yoho reported this amount did not include the funds seized by the IRS.

Ms. Yoho's testimony and report primarily focused on funds deposited into and withdrawn from Bank of Kentucky *7830, which she testified had not been disclosed to Christine. First, she testified $200,000.00 was transferred from Everbank into Gary's Discover account and $26,777.00 was later transferred from Discover into Bank of Kentucky *7830. Second, $179,225.00 was transferred directly from Everbank into Bank of Kentucky *7830. Ms. Yoho's report includes a chart showing $131,311.00 in undisclosed funds withdrawn from Bank of Kentucky *7830 between October 2010 and July 2011. This amount does not include funds traced to deposits into Fifth Third *7168, Gary's brother's account, because they were seized by the IRS. Ms. Yoho was unable to trace the $131,311.00 to any other bank account associated with Gary. Ultimately, Ms. Yoho concluded the $131,311.00 she identified as undisclosed funds were not part of the $238,329.07 seized by the IRS. She also testified to Gary's statements from the criminal case where he admitted to keeping $30,000.00 to $70,000.00 in cash in his home.

On cross-examination, Ms. Yoho admitted to preparing a version of her report prior to entry of the 2014 agreed order. Although she appeared unsure of what documents relating to the criminal case she reviewed in preparing the

earlier report, she admitted she likely had Mr. Wilson's affidavit from the criminal case which discusses deposits into and withdrawals from Bank of Kentucky *7830. When questioned about a number of deposits of just under $10,000.00 into Fifth Third *5816, which occurred during June and July 2011 and were documented in Gary's plea agreement, Ms. Yoho testified those could not be traced back to Bank of Kentucky *7830 because each withdrawal and deposit did not occur on the same day. V.R. at 9/26/19, 11:48:33.

As part of her case, Christine introduced more than forty authorizations to release account information Gary signed between 2010 and 2013 which enabled her to examine his records from various financial institutions. These included authorizations for Christine to gain access to Gary's bank statements from Discover, PNC, Everbank, Credit Suisse, and Atlantic International Bank. Of particular note, Christine introduced releases for all accounts in Gary's "name and/or as a co-signatory, joint, trustee, etc." held by Fifth Third Bank and Bank of Kentucky signed by Gary on February 19, 2013.[5] Furthermore, Christine introduced a document from Bank of Kentucky showing Bank of Kentucky *7830 was opened in the name of BES Enterprise, LLC, a company owned by Gary, with the business' tax identification number ("TIN").

---

[5] The record indicates BB&T, which acquired Bank of Kentucky, did not immediately release the records for Bank of Kentucky *7830 despite being presented with a release signed by Gary.

-8-

However, this document also lists Gary as the signatory on the account and includes his name, birthdate, and Social Security number.

Gary then testified. He claimed the $131,311.00 identified by Ms. Yoho as undisclosed funds had been seized by the IRS. He admitted he hid funds from Christine and the United States government. V.R. at 9/26/19, 12:34:15. He testified Bank of Kentucky *7830 was not disclosed in Exhibit 1 to the 2014 agreed order because the account was closed in 2011. He also claimed to have signed every release for his bank accounts provided by Christine between 2010 and 2013.

Finally, Robert Wilson testified. Mr. Wilson seized the funds from Gary's accounts and interviewed him regarding his structuring of transactions. He testified that, during the IRS investigation, he identified the withdrawals from Bank of Kentucky *7830 as suspicious. He was able to trace the funds withdrawn from Bank of Kentucky *7830 into Fifth Third *5816 despite approximately four months passing between the last withdrawal and first deposit. According to Mr. Wilson, it is not uncommon for someone who is engaging in structuring transactions to withdraw funds, hold them for some time, and then deposit them into another account. V.R. at 9/26/19, 2:05:08. He also confirmed Bank of Kentucky *7830 was closed in 2011. Mr. Wilson concluded the funds deposited into Fifth Third *5816 in June and July 2011 originated from Bank of Kentucky

-9-

*7830 and were seized by the IRS because the IRS investigation uncovered no other source for the funds.

In its October 16, 2019 order, the family court found Gary complied with the terms of the 2014 agreed order. Specifically, the court found Mr. Wilson's affidavit, which discussed Bank of Kentucky *7830, and Gary's plea agreement, which referenced Fifth Third *7168, were available through the criminal case and Christine's expert relied upon them in preparing her report. The court further found Gary signed releases for all accounts in his name in 2013. Relatedly, the family court found that, although BB&T did not immediately release Gary's bank records based upon the authorization, Gary was the signatory on the Bank of Kentucky account and the account included his Social Security number and date of birth. Based upon the testimony of Mr. Wilson, the court determined any undisclosed funds were seized by the IRS and Christine waived any claim against Gary regarding the seized funds in the 2014 agreed order. The family court also denied Christine's motions for attorney fees and reimbursement for expert fees. The court later denied Christine's subsequent motion under CR[6] 59.05. This appeal followed.

---

[6] Kentucky Rules of Civil Procedure.

## STANDARD OF REVIEW

This Court will only set aside a family court's findings of fact if they are clearly erroneous. *Moore v. Asente*, 110 S.W.3d 336, 353-54 (Ky. 2003) (citation omitted). Findings are only clearly erroneous where they are not supported by substantial evidence. *Id.* at 354 (citation omitted).

> Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men. Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the trial court to judge the credibility of the witness because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court.

*Id.* (citations omitted).

## ANALYSIS

On appeal, Christine raises three arguments: (1) the family court abused its discretion when it incorrectly placed the burden for tracing of funds on Christine; (2) the family court's findings of fact are clearly erroneous and the court abused its discretion when it failed to follow the terms of the 2014 agreed order; and (3) the family court abused its discretion when it failed to award Christine $131,311.00, attorney fees, and expert fees.

-11-

First, Christine asserts the family court abused its discretion by placing the burden of tracing on her and failing to require Gary to prove the undisclosed funds were either seized by the IRS or were in an account listed in Exhibit 1. Christine is correct that the terms of an agreed order between the parties are enforceable as contract terms. *Cataga v. Cataga*, 475 S.W.3d 49, 56 (Ky. App. 2015) (citation omitted). Regarding agreements on division of marital assets, unless found to be unconscionable, the terms of the agreement are binding upon the family court. KRS[7] 403.180(2). Herein, the parties agreed Gary would provide all documentation to trace funds deposited into Everbank and Atlantic International Bank. However, Christine then elected to hire Ms. Yoho to trace funds on her behalf in addition to the tracing conducted by Gary. Because Christine chose to trace the funds independently rather than being required to do so by the family court, we cannot conclude the court erred.

Next, Christine argues the family court abused its discretion in disregarding Ms. Yoho's tracing of the $131,311.00 withdrawn from Bank of Kentucky *7830. The question before the family court was whether those funds were seized by the IRS and the parties offered conflicting evidence. First, Christine presented the testimony of Ms. Yoho and her corresponding report to show $131,311.00 was undisclosed by Gary and owed to Christine under the 2014

---

[7] Kentucky Revised Statutes.

-12-

agreed order.  Ms. Yoho identified these funds as originating in the Everbank account and being deposited into Bank of Kentucky *7830 before being withdrawn over the course of several months in 2011.  She was unable to trace those withdrawals into any of Gary's bank accounts.  Specifically, she testified to being unable to trace any funds from Bank of Kentucky *7830 into Fifth Third *5816 because each withdrawal and deposit did not occur on the same day.

Mr. Wilson then testified to tracing funds withdrawn from Bank of Kentucky *7830 into Fifth Third *5816.  The funds were deposited into Fifth Third *5816 during June and July 2011 in amounts just under $10,000.00. When asked about the passage of four months between the withdrawals and deposits, he indicated such practices were not uncommon for someone attempting to structure transactions to avoid federal regulations.  During his investigation, Mr. Wilson could trace the funds deposited into Fifth Third *5816 to no source other than Bank of Kentucky *7830.  Those funds were later transferred into the accounts from which funds were seized by the IRS.

"[T]he family court is in the best position to evaluate the testimony and to weigh the evidence[.]" *L.D. v. J.H.*, 350 S.W.3d 828, 830 (Ky. App. 2011) (citation omitted).  Here, the family court was presented with conflicting evidence relating to the seizure of the $131,311.00 and, after consideration of all of the

evidence, was convinced by Mr. Wilson's testimony that the funds were seized by the IRS. We will not disturb this finding.

Additionally, Christine specifically argues the family court erred in disregarding Ms. Yoho's tracing of funds from Everbank to the purchase of Gary's home and into Fifth Third *7168 by way of Bank of Kentucky *7830. Ms. Yoho's report and testimony indicate the funds Gary withdrew to purchase his home and those traced into Fifth Third *7168 were excluded from the $131,311.00 Christine claims she is owed under the 2014 agreed order. Furthermore, Ms. Yoho testified the funds deposited into Fifth Third *7168 were excluded from her calculation of funds owed to Christine because they were seized by the IRS. The family court is in the best position to weigh the evidence presented at trial. *Moore*, 110 S.W.3d at 354 (citation omitted). Where Christine presented no evidence these funds were included in the amount she claimed to be owed, we cannot say the family court abused its discretion in declining to award them to her.

Furthermore, it is evident from the record Christine had access to relevant bank records, including those for Bank of Kentucky *7830 and Fifth Third *5816, from the time Gary signed authorizations in 2013. Gary signed more than forty such authorizations for numerous accounts and financial institutions between 2010 and 2013. Additionally, as found by the family court, prior to entry of the 2014 agreed order, Christine and Ms. Yoho had access to Mr. Wilson's affidavit

and Gary's plea agreement from the criminal action, which reference the Bank of Kentucky and Fifth Third accounts. On this basis, we cannot conclude the family court's finding that Gary complied with the terms of the 2014 agreed order was not supported by substantial evidence.

Finally, Christine claims the family court abused its discretion in failing to award her $131,311.00, attorney fees, and expert fees. We have affirmed the family court's finding that the $131,311.00 was seized by the IRS above and need not repeat the analysis. Furthermore, Article X of the parties' property settlement agreement allows a party to recoup attorney fees and costs only where the family court "finds that the enforcement action was proper and/or the other party is found to be in contempt of court[.]" R. at 123. No such findings were made in this matter. As we have affirmed the family court's findings that Gary complied with the 2014 agreed order and the undisclosed funds were seized by the IRS, we have no basis to disturb the court's denial of Christine's requests for fees.

## CONCLUSION

For the foregoing reasons, we affirm the October 16, 2019 order of the Kenton Circuit Court, Family Division.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Ruth B. Jackson
Crestview Hills, Kentucky

BRIEF FOR APPELLEE:

Stephen D. Wolnitzek
Covington, Kentucky